NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1300
_____

In re: Diet Drugs (Phentermine/Fenfluramin/Dexfenfluramine)
Products Liability Litigation

Vivian A. Lambert,
                            Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-99-cv-20593, 2-11-md-01203, 2-16-md-01203)
District Judge: Honorable Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2014

Before: AMBRO, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Opinion filed: December 11, 2014)

_____

OPINION[*]
_____

AMBRO, <u>Circuit Judge</u>

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Vivian Lambert appeals the District Court's Order affirming AHP Settlement Trust's final post-audit determination letter, which denied Lambert's claim for benefits from the Trust. We affirm the Order.

I.

After taking the diet drugs that are the subject of this litigation, Lambert received the now-questioned diagnosis of moderate mitral regurgitation, a dangerous heart condition the drugs can cause. She is one of many thousands who allege entitlement to compensation from AHP Settlement Trust, an entity established to carry out the 1999 Settlement Agreement between the plaintiffs' class and Wyeth, the corporate successor to American Home Products (which manufactured the diet drugs). The Settlement Agreement provides, among other things, a detailed process for claiming benefits and an audit process to make sure claims are evaluated properly. In August 2002, Lambert submitted a claim for what are known as "Matrix Benefits" (a method of compensation for certain injuries). By November 2002, the number of claims for Matrix Benefits far exceeded the expectations of the parties to the Settlement Agreement. Investigation determined that many of the claims were based on echocardiograms ("EKGs") that had been deliberately manipulated to show moderate mitral regurgitation when in fact any regurgitation was mild at most.

In order to protect the integrity of the claims process, the District Court ordered that the Trust audit all claims for Matrix Benefits. The purpose of the audit was to review whether there was a reasonable medical basis for the claim, a relatively low threshold, or whether the claim was based on an intentional misrepresentation of a material fact. In

2

February 2004, Lambert's claim passed the audit and was deemed payable. However, by May 2004 it had become clear that the audit was inadequate and that some of the payable claims were based on manipulated EKGs. The District Court therefore stayed the payment of claims like Lambert's, and the parties negotiated a procedure to determine which claims should be paid.

The stay of the Court affected 968 claims that had passed the Trust's audit. It ordered the Trust to classify the 968 claims as either not payable because of an intentional misrepresentation of material fact (called in the District Court's Order "Paragraph 5(a) Claims"), not payable for some other reason, or payable. Lambert's is a Paragraph 5(a) Claim.

In order to determine whether Paragraph 5(a) Claims should be paid, the District Judge ordered Court Approved Procedure ("CAP") 13, giving claimants a choice: submit to a final and binding medical review pursuant to the terms of the Seventh Amendment to the Settlement Agreement or have the Trust review the claims in accordance with the Settlement Agreement without the Seventh Amendment. Lambert opted for the latter process; the Trust reviewed her claim and determined that it had no reasonable medical basis and was supported by intentional misrepresentations of material facts. Lambert challenged the Trust's conclusion in the District Court, which ruled that there was no reasonable medical basis for Lambert's claim and declined to decide whether there was an intentional misrepresentation.

3

Lambert raises six arguments on appeal, which we discuss in a slightly different order from her brief. Her second and third contentions stem from the view that, after Lambert opted out of CAP 13, the Trust and the District Court could not analyze whether there was a reasonable medical basis for her diagnosis because the Trust's assertion of intentional misrepresentation of a material fact was the only reason her claim was subject to reexamination. Lambert argues that neither the Trust nor the District Court could revisit the conclusion made before the stay that a reasonable medical basis did exist.

While Lambert's analysis has a certain intuitive appeal, the parties did not bargain for the limited review she would prefer. Lambert agreed to have her claim evaluated in accord with the Settlement Agreement. It requires an auditing cardiologist to "make a determination as to whether or not there was a reasonable medical basis for the representations made by any physician in support of the Claim." Settlement Agreement § VI.E.6. If there is "no reasonable medical basis . . . *or* if the Trustees and/or Claims Administrator(s) determine that the Class member . . . intentionally made a material misrepresentation of fact," the claim is denied. *Id.* § VI.E.7 (emphasis added). If the claimant is not satisfied with the audit, she may require the Trust to file an application with the District Court to show cause why the claim should not be denied. In the Show Cause process, "[i]f the Court determines that there was no reasonable medical basis . . . *or* that the Class member . . . intentionally made a material misrepresentation of fact," the Court may grant appropriate relief, including disallowing the claim. *Id.* § VI.E.8 & VI.E.8.a (emphasis added). At each stage of the Settlement Agreement's review process,

which Lambert chose by opting out of CAP 13, a lack of a reasonable medical basis is a valid reason to deny a claim, and thus Lambert's second and third arguments on appeal fall short.

Lambert's fourth contention is that the District Court deprived her of due process by not giving her notice that she would have to prove that there was a reasonable medical basis for her claim. As discussed above, the Settlement Agreement outlines that reasonable medical basis is a subject of the audit process and the Court's review. The end result of the audit process is a Final Post Audit Determination Letter, which in Lambert's case has a two-page section headed "**Your Contest Fails to Demonstrate a Reasonable Medical Basis**." Appellant's App'x 1174. Lambert challenged this determination via the Settlement Agreement's Show Cause proceedings, which required the Trust to file a Statement of the Case before the special master appointed by the District Court. In its Statement of the Case, the Trust described one of the questions presented as "Does [Lambert] in fact have moderate mitral regurgitation . . . ? Suggested Answer: No." *Id.* at 1193. In response, Lambert "again [took] issue with their assertion," and she expressed her confidence "that the Special Master's Technical Advisor [will] confirm her qualifying injury during the Show Cause process." *Id.* at 1201. She was therefore on actual notice throughout the audit and Show Cause processes that the reasonable medical basis for her claim was at issue, and her due process claim must fail.

Lambert also contends that it was clearly wrong for the District Court to find that there was no reasonable medical basis for her diagnosis, but the only reason she offers is

5

that, before the Trust's stay, an auditing cardiologist and her own doctor determined there was such a basis. These findings were not binding on the District Court, and indeed it issued CAP 13 because many claims for benefits were unreliable and many audit determinations were wrong. Lambert provides no reason to doubt the District Court's actual analysis of the evidence. The Court considered the technical advisor's report and the Trust's expert and noted that Lambert's expert did "not identify any particular error" in the determinations that she suffered only mild mitral regurgitation. *In re Diet Drugs Products Liab. Litig.*, No. 2:16-md-1203, 2014 WL 92324, at \*6 (E.D. Pa. Jan. 9, 2014). It thus was entitled to side with the Trust's expert and did not err in doing so.

Lambert also offers no reason to accept her argument that the District Court "rubber-stamped" the technical advisor's report. Its Memorandum Opinion in this matter reflects a careful, individualized determination that permissibly relied on an advisor "to educate [the Court] in the jargon and theory disclosed by the [evidence] and to think through the critical technical problems." *Reilly v. United States*, 863 F.2d 149, 158 (1st Cir. 1988). It did not abuse its discretion in appointing a technical advisor, and it has not abdicated its judicial role to that advisor.

And last, we need not address whether the District Court impermissibly placed the burden on Lambert to disprove fraud. The Court only ruled that she lacked a reasonable medical basis for her diagnosis, and thus the burden of proof on the intentional misrepresentation issue is immaterial.

\*     \*     \*     \*     \*

For these reasons, we affirm.

6